# AFFIDAVIT IN SUPPORT OF AN
# APPLICATION UNDER RULE 41 FOR A
# WARRANT TO SEARCH AND SEIZE

I, **Robert Kukovec**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with Homeland Security Investigations (HSI) within the United States Department of Homeland Security (DHS).  I have been employed as a Special Agent since April 2002, and I am currently assigned to the HSI office in Columbus, Ohio.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search or seizure warrant.  I am currently assigned to a multi-jurisdictional narcotics task force in the central Ohio area, and I am cross designated to investigate violations of Title 21 of the United States Code.  Prior to my employment with HSI (and formerly U.S. Customs), I was employed as a police officer in the state of Ohio for approximately 8.5 years. My responsibilities and duties include the investigation and enforcement of federal laws and regulations related to customs and immigration violations, including but not limited to narcotics, financial crimes, fraud, and violations of the Immigration and Nationality Act.

2.      The information set forth in this affidavit is based upon my knowledge, training, experience, and participation in investigations involving the smuggling, possession, distribution, and storage of narcotics and narcotics proceeds.  This information is also based on the knowledge, training, experience, and investigations conducted by fellow law enforcement officers, which have been reported to me either directly or indirectly.  I believe this information to be true and reliable. This affidavit is intended to show merely that there is sufficient probable cause for the requested

warrant and does not set forth all of my knowledge about this matter. Your affiant did not withhold any information or evidence that would negate probable cause.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

3.        I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property — five (5) cellular phones (**TARGET DEVICES**) as more fully described in Attachment A, incorporated herein by reference — which are currently in law enforcement possession, and the forensic extraction/examination from that property of electronically stored information more particularly described in Attachment B, which is incorporated herein by reference. The **TARGET DEVICES** were all previously seized during the arrest of Saul MIRAMONTES (aka Cenuhe Antonio Zepeda-Vibanco, aka Saul Luna-Miramontes, aka Damian Zepeda-Arjona, aka Javier Salas-Vernal, aka "Abaham") on a federal arrest warrant as well as during the execution of a search warrant at his residence after his arrest on November 26, 2024, in Columbus, Ohio. The **TARGET DEVICES** were seized by the Delaware County Drug Task Force (DCDTF). The **TARGET DEVICES** are currently located/stored at the Delaware County Sheriff's Office Property Room in Delaware, Ohio.

4.        Based upon the information contained within this affidavit, I have probable cause to believe that inside the **TARGET DEVICES** there is stored electronic communications/data that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use, or which is or has been used as a means of committing a criminal offense. Specifically, I have probable cause to believe that within the **TARGET DEVICES** there is evidence of violation of 21 U.S.C. § 846,

conspiracy to distribute and to possess with intent to distribute a controlled substance (the "Target Offenses").

## <u>PROBABLE CAUSE</u>

5.    In April 2023, HSI Columbus and the Delaware County Drug Task Force (DCDTF) developed information in reference to several unknown Hispanic males operating a drug trafficking organization (DTO) in the central Ohio area selling fentanyl to drug users/dealers in various counties, including Franklin County, Delaware County, Union County, Licking County, Pickaway County, Logan County, and Hardin County.  Two previously identified DTO members, Lino ISIORDIA-HERNANDEZ and Luis Eduardo MARTINEZ-TORRES, were arrested as part of this investigation on June 20, 2023, with approximately three (3) kilograms of fentanyl powder/pills, and they were prosecuted through the U.S. District Court in the Southern District of Ohio.

6.    In August 2023, investigators received information from the Logan County (Ohio) Sheriff's Office (LCSO) that they discovered through a confidential source that another unknown Hispanic male (later identified as Milton Ariel ALEMAN-CARTAGENA) was in the central Ohio area taking over the fentanyl distribution operation for this DTO shortly after ISIORDIA-HERNANDEZ and MARTINEZ-TORRES were arrested, and this new subject was utilizing phone number 614-808-5938.

7.    Between approximately August 4, 2023, and October 10, 2023, LCSO, DCDTF, and/or HSI Columbus arranged to purchase a total of 58.26 grams of fentanyl (based on lab results) from ALEMAN-CARTAGENA through the use of an undercover officer (UC) or a confidential informant.  All seven (7) narcotics transactions were set up by calling phone number 614-808-5938.  ALEMAN-CARTEGNA usually showed up for the transaction in a maroon 2015 Nissan

Altima (Ohio registration KAS3634) or a red 2007 Toyota RAV4 (Ohio registration KDV3581) and generally returned to 231 S. Harris Avenue, Columbus, Ohio following the transactions.

8.     A review of the toll records for phone number 614-808-5938 also revealed that most of the top callers to this phone number were the same phone numbers that were in contact with the previous members of this DTO who were arrested in June 2023 (ISIORDIA-HERNANDEZ and MARTINEZ-TORRES).  These phone numbers all belonged to suspected drug users in the central Ohio area based on previously identified information from the prior arrests in this investigation.  On August 24, 2023, the DCDTF obtained a pen register/phone ping search warrant for this phone number through the Franklin County Court of Common Pleas in Columbus, Ohio.  However, the phone ping for phone number 614-808-5938 showed the phone was located in Oklahoma City, Oklahoma.  It appeared that this number was just the "dispatch" line that drug users would contact to set up the narcotics transactions, then the "dispatcher" would contact the "runner" (ALEMAN-CARTAGENA) and provide him instructions on where to deliver the narcotics.

9.     In October 2023, investigators also noticed several other unknown Hispanic males coming and going from the residence at 231 S. Harris Avenue in Columbus, Ohio.  Investigators also discovered a black 2011 Nissan Maxima (New Mexico registration BRGA10) registered to a Hispanic subject from Albuquerque, New Mexico parked in front of the residence on October 11, 2023.  Investigators later discovered the registered owner of this vehicle was a target of a narcotics investigation by the Drug Enforcement Administration (DEA) in Albuquerque, New Mexico.  This DTO was also linked to an investigation by both the DEA in Oklahoma City, Oklahoma and the Oklahoma Bureau of Narcotics (OBN) where the "dispatcher" and "dispatch" line (614-808-5938) were located.  The black Nissan Altima with the New Mexico registration was then observed by

the OBN at their target location in Oklahoma City the day after (October 12, 2023) the vehicle and registered owner was observed in Columbus, Ohio. On October 13, 2023, the black Nissan Altima then left town and was suspected of travelling back to Albuquerque, New Mexico in tandem with another vehicle suspected of being our "dispatcher." The phone pings on the "dispatch" line confirmed the "dispatcher" travelled to Alburquerque, New Mexico around that same time.

10. Technical surveillance and a review of the court ordered GPS vehicle trackers on the maroon 2015 Nissan Altima (Ohio registration KAS3634) and the red 2007 Toyota RAV4 (Ohio registration KDV3581) indicated that ALEMAN-CARTAGENA travelled to the same locations and met with the same previously identified drug users that were listed as the top callers on the "dispatch" line (614-808-5938) between August 2023 and October 2023. Surveillance also observed a second unknown Hispanic male subject (later identified as Saul MIRAMONTES, aka Cenuhe Antonio Zepeda-Vibanco, aka Saul Luna-Miramontes, aka Damian Zepeda-Arjona, aka Javier Salas-Vernal, aka "Abaham") travelling around with ALEMAN-CARTAGENA in mid-October 2023 conducting narcotics transactions. Based on your affiant's training and experience, it appeared that ALEMAN-CARTAGENA was training MIRAMONTES in conducting the narcotics transactions and teaching him the area.

11. On October 20, 2023, the DCDTF obtained a renewal of the GPS vehicle tracker warrant through the Franklin County Municipal Court in Columbus, Ohio for the maroon 2015 Nissan Altima (Ohio registration KAS3634). Also on this date, the DCDTF obtained a renewal of the pen register/phone ping search warrant for the "dispatch" line (614-808-5938) through the Franklin County Court of Common Pleas in Columbus, Ohio. Surveillance later discovered that MIRAMONTES was now driving the red 2007 Toyota RAV4 (Ohio registration KDV3581) and residing at 190 Derrer Road in Columbus, Ohio, which was the other side of the duplex from where

the previous DTO members (ISIORDIA-HERNANDEZ and MARTINEZ-TORRES) were arrested in June 2023 at 192 Derrer Road. ALEMAN-CARTAGENA then appeared to mainly utilize the maroon Nissan Altima and still resided at 231 S. Harris Avenue in Columbus, Ohio.

12.     On October 24, 2023, the LCSO UC received a text message from a new phone number (614-508-2935) claiming to be "Abraham" and that he was the new guy in town working for this DTO. "Abraham" advised the UC to let him know if he needs anything from the "store." Based on your affiant's training and experience, the "store" was in reference to placing an order for narcotics. The UC then set up a narcotics transaction for the next day to purchase some fentanyl and heroin.

13.     On October 25, 2023, HSI Columbus, the DCDTF, and the LCSO conducted an undercover purchase of 11.96 grams of fentanyl (based on lab results) for $720 from ALEMAN-CARTAGENA in Columbus, Ohio (Delaware County) utilizing the UC. The narcotics transaction was set up by calling phone number 614-808-5938, and ALEMAN-CARTAGENA then arrived at the meet location in the maroon 2015 Nissan Altima (Ohio registration KAS3634) to conduct the transaction. ALEMAN-CARTAGENA was in the front passenger seat of the vehicle and the driver was an unknown Hispanic male (later identified as Darwin Joel GONZALES-ENAMORADO). There was also an unidentified Hispanic female with a child in the backseat of the vehicle during this narcotics transaction. The UC got a text message later that day from "Abraham" from phone number 614-508-2935 advising that he will wait on the UC's call to conduct the narcotics transaction discussed the day before. The UC then asked "Abraham" was that not you who he/she just met with to purchase the fentanyl earlier. "Abraham" advised that it was not, and he wanted to know who the UC met with and what phone number the UC called to

place the order. "Abraham" advised that they worked for the same "store," but he would give the UC a better price.

14.     On October 26, 2023, the GPS vehicle tracker on the maroon 2015 Nissan Altima (Ohio registration KAS3634) registered and utilized by ALEMAN-CARTAGENA indicated that it started travelling west out of the state eventually ending up in Indianapolis, Indiana where it made several stops before continuing westbound. The maroon Nissan Altima eventually travelled all the way to Oklahoma City, Oklahoma arriving on October 28, 2023, and remained there. ALEMAN-CARTAGENA and GONZALES-ENAMORADO were suspected of being in the vehicle because neither of them were ever observed in Columbus, Ohio again after this time.

15.     On October 27, 2023, HSI Columbus, the DCDTF, and the LCSO conducted an undercover purchase of 1.93 grams of "black tar" heroin (based on lab results) for $100 from "Abraham" (who was confirmed to be MIRAMONTES) in Marysville, Ohio (Union County) utilizing the UC. The narcotics transaction was set up by calling phone number 614-508-2935, and MIRAMONTES then arrived at the meet location in the red 2007 Toyota RAV4 (Ohio registration KDV3581) to conduct the transaction. MIRAMONTES was observed by surveillance units leaving 190 Derrer Road in Columbus, Ohio, where he was previously identified as residing, prior to the transaction. The DCDTF later that same day obtained a pen register/phone ping search warrant for MIRAMONTES' phone number (614-508-2935) through the Franklin County Court of Common Pleas in Columbus, Ohio.

16.     On November 9, 2023, HSI Columbus, the DCDTF, and the LCSO conducted an undercover purchase of 7.90 grams of fentanyl (based on lab results) for $400 from MIRAMONTES in Columbus, Ohio (Delaware County) utilizing the UC. The narcotics transaction was set up by calling phone number 614-508-2935, and MIRAMONTES then arrived

at the meet location in the red 2007 Toyota RAV4 (Ohio registration KDV3581) to conduct the transaction. MIRAMONTES was observed by surveillance units leaving 190 Derrer Road in Columbus, Ohio, prior to the transaction and returning to the residence after the transaction.

17. On November 30, 2023, the DCDTF obtained a renewal of the GPS vehicle tracker warrant through the Franklin County Municipal Court in Columbus, Ohio for the red 2007 Toyota RAV4 (Ohio registration KDV3581).

18. On December 6, 2023, investigators with the LCSO observed MIRAMONTES in the red 2007 Toyota RAV4 (Ohio registration KDV3581) meet with a known drug user near Lakeview, Ohio (Logan County) and conduct what appeared to be a narcotics transaction based on their training and experience. After the transaction, the LCSO conducted an interdiction traffic stop on the known drug user as they departed the meet location and separated from MIRAMONTES. The traffic stop resulted in the discovery and seizure of approximately 4.23 grams of fentanyl that was just purchased from MIRAMONTES.

19. On December 19, 2023, the LCSO UC received a text message from MIRAMONTES utilizing a new phone number: 614-828-7446. MIRAMONTES advised this was his new phone number if the UC needed anything. On December 23, 2023, the UC received another text message from MIRAMONTES from this new phone number indicating that he had "some good quality coke" (cocaine). Based on this information, the DCDTF obtained a pen register/phone ping search warrant for this new "dispatch" line (614-828-7446) through the Franklin County Court of Common Pleas in Columbus, Ohio on December 27, 2023.

20. On January 4, 2024, investigators discovered that ALEMAN-CARTAGENA and GONZALES-ENAMORADO were arrested for narcotics trafficking by another drug task force in Oklahoma City, Oklahoma. Both subjects later confirmed during interviews that they moved to

Oklahoma City from Ohio. ALEMAN-CARTAGENA also advised that his "partner" in Oklahoma City, ▓▓▓▓▓▓▓▓▓▓, just recently overdosed and died in December 2023. The Oklahoma City Police Department confirmed responding to an overdose death involving ▓▓▓▓▓▓▓▓▓▓ on December 9, 2023, where they also located approximately three (3) ounces of powdered fentanyl that appeared like it had just been broken off the corner of a kilogram brick.

21.    On January 10, 2024, the DCDTF obtained another renewal of the GPS vehicle tracker warrant through the Franklin County Municipal Court in Columbus, Ohio for the red 2007 Toyota RAV4 (Ohio registration KDV3581). However, shortly after obtaining this tracker renewal warrant, MIRAMONTES appeared to stop utilizing this vehicle on a regular basis and he was observed by surveillance units operating a silver 2012 Mazda 5 (Ohio temporary registration R641378) instead.

22.    On January 14, 2024, the DCDTF obtained a GPS vehicle tracker warrant through the Franklin County Municipal Court in Columbus, Ohio for the silver 2012 Mazda 5 (Ohio temporary registration R641378). On January 17, 2024, investigators deployed the GPS vehicle tracker on the silver Mazda 5 while it was located at 190 Derrer Road in Columbus, Ohio.

23.    On January 26, 2024, investigators with the Hardin County Sheriff's Office (HCSO) observed MIRAMONTES in the silver 2012 Mazda 5 (Ohio temporary registration R641378) meet with a known drug user in Kenton, Ohio (Hardin County) and conduct what appeared to be a narcotics transaction. After the transaction, the HCSO arrested the known drug user on an outstanding warrant after he/she separated from MIRAMONTES. During the arrest, the drug user was found in possession of approximately one (1) gram of fentanyl that was seized.

9

The drug user admitted to purchasing the fentanyl from a Hispanic male he just met with that travelled there from Columbus, Ohio (MIRAMONTES).

24.     Between February 2024 and April 2024, MIRAMONTES appeared to switch vehicles, phones, and residences several times.  However, through physical and technical surveillance of MIRAMONTES, it indicated he was still travelling to the same locations and meeting with the same previously identified drug users that were listed as the top callers on the "dispatch" line.  This allowed investigators to identify the various vehicles, phones, and residences that MIRAMONTES was utilizing to maintain surveillance on him through additional GPS tracker warrants and pen register/phone ping search warrants.

25.     On April 24, 2024, investigators conducted surveillance on MIRAMONTES who was now driving a gray 2008 Honda Accord (Ohio temporary registration R865238). MIRAMONTES was observed meeting with several previously identified drug users throughout the central Ohio area and appeared to be conducting narcotics transactions with each of these people based on your affiant's training and experience.  One particular drug user was approached by investigators after meeting with MIRAMONTES and then travelling to his/her place of work in Columbus, Ohio.  This drug user agreed to cooperate with investigators and admitted to being addicted to fentanyl.  This subject became a cooperating source (CS) and advised that he/she typically purchased approximately one to two grams of fentanyl every week from the same Hispanic male (MIRAMONTES) since around November 2023.  This information was corroborated by phone tolls that indicated the CS had around 216 contacts with MIRAMONTES over the past month alone, and the CS was the third top caller on the "dispatch" line utilized by MIRAMONTES.

26.     On May 22, 2024, HSI Columbus and the DCDTF utilized the CS encountered on April 24, 2024, to conduct a controlled buy of approximately two (2) grams of fentanyl for $100 from MIRAMONTES in Columbus, Ohio.  The narcotics transaction was set up by calling the current "dispatch" phone number (614-512-1593) utilized by MIRAMONTES, and MIRAMONTES then arrived at the meet location in the gray 2008 Honda Accord (now displaying Ohio registration KIH6783) to conduct the transaction.

27.     In August 2024, investigators discovered MIRAMONTES was now utilizing phone number 614-641-1305 as the new "dispatch" line.  A review of phone tolls for this number revealed one of the top callers was phone number 740-405-8349.  This phone number was discovered to belong to a female in Newark, Ohio (Licking County).  The female was identified as a target of investigation by DEA Columbus and the Franklin County Sheriff's Office Special Investigations Unit (FCSO SIU) in another narcotics investigation.  The female was suspected of receiving packages of narcotics shipped to her from California related to their investigation.  MIRAMONTES had previously travelled to the female's known residence in July 2024 as well.  MIRAMONTES was also driving a new vehicle and living in a new apartment during this same time frame.  MIRAMONTES was identified as residing at an apartment at 5497 Mesa Ridge Lane, Apartment J, in Columbus, Ohio and driving a dark blue 2009 Ford Edge (Ohio temporary registration S297902).

28.     On August 19, 2024, investigators were advised by postal inspectors with the U.S. Postal Inspection Service (USPIS) that there was a postal package from California scheduled to be delivered to the female's residence in Newark, Ohio (Licking County).  Surveillance was initiated on the residence to observe what would happen after the package was delivered.  Within one to two minutes after the postal package was delivered to the female's residence and taken inside the

house, the female appeared on MIRAMONTES' phone tolls attempting to contact him. Based on your affiant's training and experience, this was an indication that the shipped parcel that the female received from California probably contained narcotics and it was destined for MIRAMONTES. However, after several hours of surveillance at the female's residence, no one ever showed up to pick up the parcel, so surveillance was terminated.

29. On September 9, 2024, postal inspectors with the USPIS identified another postal package shipped from California to the same female's residence in Newark, Ohio. Postal inspectors interdicted this mail parcel at the Newark, Ohio post office and a federal search warrant was obtained through the U.S. District Court in the Southern District of Ohio. Investigators executed the search warrant on the parcel, resulting in the discovery and seizure of approximately 1,020 gross grams of a white substance pressed into the shape of a brick and stamped on one side with "1000." The white substance was wrapped in numerous layers of tape and packaging. The substance was field tested using a TruNarc narcotics analyzer, and the substance field tested presumptive positive for the presence of fentanyl. The fentanyl was removed from the parcel, and a sham substance was repackaged in the parcel along with leaving approximately 83 gross grams of a representative sample of the seized fentanyl in the parcel.

30. On September 9, 2024, investigators executed an anticipatory search warrant at the female's residence after the package was delivered, taken into the residence, and opened. During the search of the residence, investigators located the parcel opened and placed inside of a chest freezer in the kitchen. Within the parcel was the seized 83 gross grams of a representative sample of the seized fentanyl, along with the sham substance. The female was arrested and charged via a criminal complaint through the U.S. District Court in the Southern District of Ohio.

31.     After execution of the search warrant and the arrest of the female, surveillance was maintained by investigators on her residence in Newark, Ohio in case anyone arrived and tried to pick up the delivered mail parcel.  Shortly after the mail parcel was delivered and after the female was arrested, MIRAMONTES started reaching out to the female's cellular phone to attempt to contact her.  Later that evening, a GPS vehicle tracker on MIRAMONTES' dark blue 2009 Ford Edge (now displaying Ohio registration KKW3736) indicated that it was travelling toward Newark, Ohio.  MIRAMONTES arrived in the vicinity of the female's residence in Newark, Ohio, but he did not approach the house.  MIRAMONTES parked just down the street from her residence with his lights off and just sat there for a bit watching the residence and working his phone.  After a short while, MIRAMONTES departed the area.   Several surveillance units followed MIRAMONTES back to his previously identified residence at 5497 Mesa Ridge Lane in Columbus, Ohio.  Based on your affiant's training and experience, it appeared the seized postal parcel containing the one (1) kilogram of fentanyl was supposed to be turned over to MIRAMONTES based on the multiple phone calls to the female's phone and the trip to her residence shortly after the parcel was delivered to her residence.

32.     After the arrest of the female on September 9, 2024, MIRAMONTES once again moved to a new location at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio. MIRAMONTES also switched out his vehicle and phone number twice between September 2024 and November 2024.

33.     On October 23, 2024, investigators conducted surveillance on MIRAMONTES. Surveillance units observed MIRAMONTES depart his residence at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio in a gray (unknown year) Honda Accord (Maryland fictitious temporary registration T469951) and appeared to be running errands by going to lunch at a food

truck, met and talked with a couple mechanics at a car lot, and then went and got his car washed. Surveillance units then followed MIRAMONTES directly to Bellefontaine, Ohio (Logan County) where he met with a previously identified drug user and conducted what appeared to be a narcotics transaction based on your affiant's training and experience. MIRAMONTES left Bellefontaine, Ohio after this meet and then travelled to Kenton, Ohio (Hardin County) where he appeared to meet with another previously identified drug user based on the location of the phone pings and toll records around the same time on the "dispatcher" line pen register. MIRAMONTES then returned to Bellefontaine, Ohio where investigators observed MIRAMONTES meet with another previously identified known drug user that he had delivered fentanyl to on several occasions. During the meet, it appeared that a drug transaction took place based on the training and experience of investigators. After MIRAMONTES and the drug user completed the transaction and departed the area, the LCSO had a marked police cruiser conduct an interdiction traffic stop on the drug user. The drug user was interviewed by investigators and admitted to just purchasing approximately one (1) gram of "heroin" for $50 from a Hispanic male known as "Abraham" in a gray Honda. The drug user advised he/she had been purchasing narcotics approximately once a week from this organization for about the last two (2) years. The drug user positively identified a surveillance photograph of MIRAMONTES as the subject he/she knew as "Abraham." The drug user also provided the same phone number (740-647-7128) for "Abraham" that investigators just identified as the new "dispatch" line for MIRAMONTES. A field test of the seized narcotics tested presumptive positive for fentanyl. Electronic surveillance indicated that MIRAMONTES then returned to the Columbus, Ohio area where he appeared to stop for dinner based on the location of the phone pings, and then returned to his residence at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio.

34. Shortly after the interdiction stop on the drug user in Bellefontaine, Ohio, MIRAMONTES once again switched phone numbers and vehicles in November 2024. The new "dispatch" line for MIRAMONTES was identified as 380-261-8901, and the new vehicle he was now driving was a black 2012 Jeep Patriot (Ohio registration KMB8596). On November 14, 2024, the DCDTF obtained a pen register/phone ping search warrant for the new "dispatch" line (380-261-8901) through the Franklin County Court of Common Pleas in Columbus, Ohio.

35. On November 21, 2024, based on electronic surveillance of the phone pings, MIRAMONTES travelled directly from his residence at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio to Bellefontaine, Ohio (Logan County). Phone tolls on the "dispatch" line indicated MIRAMONTES was communicating with a previously identified known drug user in Bellefontaine, Ohio. Investigators with the LCSO established surveillance on this known drug user and observed MIRAMONTES meet with this drug user in Bellefontaine, Ohio and conduct what appeared to be a narcotics transaction based on their training and experience. MIRAMONTES arrived at the meet location in the black 2012 Jeep Patriot (Ohio registration KMB8596). Upon completion of the suspected narcotics transaction and after MIRAMONTES left the area, LCSO investigators approached the drug user and conducted a consensual encounter. The drug user cooperated with investigators and admitted to just purchasing approximately one (1) gram of fentanyl from a Hispanic male known as "Abraham" (MIRAMONTES). A field test of the seized narcotics tested presumptive positive for fentanyl. Electronic surveillance indicated that MIRAMONTES travelled to Kenton, Ohio (Hardin County) after he left Bellefontaine, Ohio and appeared to meet with another previously identified known drug user based on the location of the phone pings and pen register activity, before returning to his residence at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio later that day.

36.    On November 25, 2024, HSI Columbus obtained an arrest warrant based on a criminal complaint for MIRAMONTES as well as a search warrant for his residence at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio through the U.S. District Court in the Southern District of Ohio.

37.    On November 26, 2024, HSI Columbus and the DCDTF executed the federal arrest and search warrants in reference to MIRAMONTES.  Prior to execution of the search warrant, MIRAMONTES departed his residence in the black 2012 Jeep Patriot (Ohio registration KMB8596) and was interdicted by law enforcement in the 5700 block of Arborwood Drive and arrested on his arrest warrant.  A narcotics detection canine alerted to the presence of an odor of narcotics coming from MIRAMONTES' vehicle after his arrest.  A search of MIRAMONTES and his vehicle resulted in the discovery and seizure of approximately one (1) gram of fentanyl, $1,413 in cash, a fraudulent Mexican identification card in a different name ("Javier Salas Vernal"), two (2) cellular phones, several wire transfer receipts, and the title to the vehicle.  The vehicle was also seized and impounded.  Subsequent to MIRAMONTES' arrest, the search warrant was executed on his residence at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio resulting in the discovery and seizure of approximately 1.75 kilograms of powdered fentanyl, $3,872 in cash, miscellaneous drug paraphernalia, three (3) cellular phones, a digital scale, numerous wire transfer receipts, a drug ledger, and a RF detector.  A red 2007 Toyota RAV 4 (Ohio registration KKW4070) previously utilized by MIRAMONTES to distribute narcotics was also located outside of the apartment.  A narcotics detection canine alerted to the presence of an odor of narcotics coming from the vehicle.  The DCDTF seized and impounded the vehicle.  A search of the vehicle later resulted in the discovery and seizure of an additional $2,009 in cash inside the vehicle.  All the seized property was collected as evidence by the DCDTF and transported to the Delaware

County Sheriff's Office Property Room for processing. The narcotics seized during the search warrant at the apartment field tested positive for fentanyl utilizing the TruNarc narcotics analyzer.

38.     Record checks on MIRAMONTES indicated he is a Mexican national illegally present in the United States who has been encountered and removed from the United States several times. MIRAMONTES also has a criminal history for narcotics trafficking in Arizona and illegal reentry. The alien registration file for MIRAMONTES is filed under the name of "Saul Miramontes" based on the name utilized during his first encounter with immigration authorities. However, MIRAMONTES advised during the booking process that his real name was actually Cenuhe Antonio ZEPEDA-VIBANCO. MIRAMONTES had utilized multiple different aliases during his past encounters with law enforcement and/or immigration authorities dating back to at least 2008.

39.     At the time of his arrest, MIRAMONTES was in possession of a **blue Samsung cellular phone in a clear case (Model #SM-A156U, IMEI #359590184313341, Serial #R5CX91GEKKR) and a blue Samsung cellular phone in a black case with kickstand (Model #SM-A156U, IMEI #355030767598418)**. The search warrant at MIRAMONTES' residence resulted in the discovery and seizure of an additional three (3) cellular phones: a **blue Samsung cellular phone with no case (Model #SM-A156U, IMEI #356408512894861), a blue Samsung cellular phone in a black case with silver kickstand (Model #SM-A156U, IMEI #355030762827572), and a black Samsung cellular phone in a black and green case (Model #SM-A226BR/N, IMEI #352609/40/218147/5)**. These five (5) cellular phones comprise of the listed **TARGET DEVICES** in Attachment A.

40.     Based on your affiant's training and experience in narcotics investigations, narcotics traffickers typically rely on their cellular phones to conduct their drug business and

change phones regularly to avoid detection or monitoring. Narcotics traffickers tend to utilize cellular phones to communicate with narcotics customers, as well as sources of supply and others providing support in their narcotics distribution operation. Your affiant has learned through training and experience, individuals conducting this business will maintain customers' and/or sources' telephone numbers in their phones along with text messages and other data useful in their operation. Throughout the course of this investigation, MIRAMONTES was observed or confirmed to be utilizing his cellular phones to conduct his narcotics business based on controlled buys of fentanyl by investigators, pen register/phone ping activity, and source information. Your affiant believes there is probable cause to believe that evidence of violations of the Target Offenses may be contained on the above listed **TARGET DEVICES**.

41.     The **TARGET DEVICES** are currently in the lawful possession of the DCDTF and HSI Columbus, and they came into investigators' possession in the following way: seized during the federal arrest of MIRAMONTES on November 26, 2024, at or near the 5700 block of Arborwood Drive in Columbus, Ohio and during the search warrant at 5835 Arborwood Drive, Apartment A, in Columbus, Ohio on that same day. Therefore, while the DCDTF and HSI Columbus might already have all necessary authority to examine the **TARGET DEVICES**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **TARGET DEVICES** will comply with the Fourth Amendment and other applicable laws.

42.     The **TARGET DEVICES** are currently in storage at the Delaware County Sheriff's Office Property Room in Delaware, Ohio. In my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of the DCDTF and HSI Columbus.

## **TECHNICAL TERMS**

43.    Based on my training and experience, I use the following technical terms to convey the following meanings:

A.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

B.    Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable

19

storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

C. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

D. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can

receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

E.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

F.  IP Address:  An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most

Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

G. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

H. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

44. Based on my training, experience, and research, I know that the **TARGET DEVICES** may have capabilities that allow them to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device(s).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

45. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

46. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence

22

of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICES** because:

A.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

B.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

C.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

D.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

E.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

F.  I know that when an individual uses an electronic device to facilitate the trafficking of controlled substances, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

47.  *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

48.  *Manner of execution*. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

49.     Based on the facts set forth in this Affidavit, there is probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** described in Attachment A to seek the items described in Attachment B.



ROBERT KUKOV  Digitally signed by ROBERT KUKOV
Date: 2024.12.04 01:25:46 -05'00'

Robert Kukovec
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this ___4th___ day of December, 2024.

Elizabeth A. Preston Deavers
United States Magistrate Judge

25